UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

JOHN VIDUREK, *et al*.,

                               *Plaintiffs*,

                        1:18-CV-392

        -against-

                        (MAD)(CFH)

GOVERNOR ANDREW M. CUOMO, *et al*.,

                               *Defendants*.


**DEFENDANTS' MEMORANDUM OF LAW
IN SUPPORT OF A MOTION TO DISMISS
PURSUANT TO FRCP 12(b)(6)**


                                        BARBARA D. UNDERWOOD
                                        Acting Attorney General of the State of New York
                                        *Attorney for the Defendants*
                                        The Capitol
                                        Albany, NY 12224


MICHAEL G. McCARTIN
Assistant Attorney General
    *Of Counsel*
Bar Roll No. 511158
Telephone: (518) 776-2620

May 16, 2018

**Table of Contents**

Preliminary Statement……………………………………………………………………………….1

Statement of the Facts…....……………………………………………………………………….....1

      A.      New York's Longstanding Regulation of Firearms………………………………1

      B.      The SAFE Act……………………………………………………………………….2

      C.      Plaintiffs' Pleading………………………………………………………………..3

Standard of Review……..…………………………………………………………………………...4

Argument……………………………………………………………………………………………….5

Point I      Plaintiffs' broad-based "sovereign citizen" Second Amendment challenge
to the New York State SAFE Act and numerous other firearms-related statutes
is frivolous and must be dismissed by the Court…………….…………………...5

Point II     Plaintiffs' claims must also be dismissed based upon the doctrine of
collateral estoppel since these same Plaintiffs litigated and lost identical
legal claims in State court in 2013 against the Governor and each of the
members of the New York State Senate and Assembly...…………………………..8

Conclusion……………………………………………………………………………………….10

**Preliminary Statement**

Defendants in this action – *i.e.*, Governor Andrew M. Cuomo, Senator John J. Flanagan, the Majority Leader of the N.Y. State Senate, and Assemblyman Carl E. Heastie, the Speaker of the N.Y. State Assembly – hereby move this Honorable Court to dismiss this action pursuant to FRCP 12(b)(6) for failure to state a viable legal claim.

In this action, the *pro se* Plaintiffs, who refer to themselves as "the Sovereign People" and "the Sovereign People of New York", *see, e.g.*, Complt., p. 12, advance a "sovereign citizen" belief system, one in which they, as "the Sovereign People," are supposedly "independent of all legislated statutes, codes, rules, and regulations." *Id.*, p. 15.  Using this legal theory – a legal theory that has been repeatedly referred to by multiple federal courts as being entirely frivolous – the Plaintiffs challenge the New York State Secure Ammunition and Firearms Enforcement Act ("SAFE Act"), and virtually all other New York Penal Law sections that ban or restrict their access to weapons and firearms.  But this action must be dismissed by this Court because Plaintiffs' "sovereign citizen" legal theory has absolutely no basis in law.

Additionally, since Plaintiffs litigated and lost a similar case in New York State Supreme Court in 2013, Plaintiffs' present action must also be dismissed on collateral estoppel grounds.

**Statement of the Facts**

A.      **New York's Longstanding Regulation of Firearms**

State and local laws have long regulated firearms.  "The earliest and most numerous state and local laws relate to the carrying or use of firearms.  In the 1600s, Massachusetts prohibited the carrying of defensive firearms in public places".  George Newton and Franklin E. Zimring, *Firearms and Violence in American Life*, staff report submitted to the National Commission on Causes and Prevention of Violence, Washington D.C., Government Printing Office, 8 (1969). Gun regulations for public safety purposes have been used by state and local governments dating

1

to even before the adoption of the Second Amendment and have long included significant licensing and registration requirements and limitations on the types of weapons that can be possessed.  *See* Saul Cornell & Nathan DeNino, *A Well Regulated Right: The Early American Origins of Gun Control*, 73 Fordham L. Rev. 487, 502 (2004); Saul Cornell, *A Well-Regulated Militia: The Founding Fathers and the Origins of Gun Control in America*, 140 (2006).  State regulations prohibiting the use of firearms on certain occasions and in certain locations also existed in 1785.  *See* 1785 N.Y. Laws 152; *see also* Saul Cornell, *The Early American Origins of the Modern Gun Control Debate: The Right to Bear Arms, Firearm Regulation, and The Lessons of History*, 17 STNLPR 571, 585 (2006).

New York has long regulated the possession and carrying of firearms and other dangerous weapons.  For example, the State's licensing requirement was first codified in 1911 as the Sullivan Law.  Enacted to combat handgun violence, the Sullivan Law has regulated the possession and carrying of handguns in New York State for a century.  Today, the State's firearms regulations are encompassed primarily in Articles 265 and 400 of the Penal Law.

B.      **The SAFE Act**

Following the horrific mass shooting deaths of 20 schoolchildren and six adults in Newtown, Connecticut on December 14, 2012, and the murder of two first responders in Webster, New York, on December 24, 2012, Governor Cuomo and the Legislature acted to put in place a comprehensive legislative package, the SAFE Act, to amend New York's existing firearm regulations.  The SAFE Act made significant reforms in order to prevent gun violence, from increasing the safety of New York's schools by regulating the possession of firearms on school property and forming a statewide team of specialists to review and assist schools in developing school safety plans, to providing for greater safety for families in New York by allowing judges to temporarily remove firearms from those subject to a protective order where

2

the court finds a substantial risk of violence against the person protected by the order.

The SAFE Act, among other things, toughens regulations to limit access to firearms by those with a disqualifying mental health condition; requires federal background checks for most private sales of guns; advances a statewide database and greater uniformity in licensure; and provides a variety of other protections and enhancements to gun use licensure. Several sections of the SAFE Act provide for new and enhanced penalties for illegal gun use, including, for example, §§ 33-36, which increases penalties for the murder of certain first responders and the adoption of a new Penal Law § 460.22, which addresses the threat to public safety of certain organized violent gangs and their illegal purchases of weapons in their enterprise.

### C. Plaintiffs' Pleading

In their Complaint, Plaintiffs identify themselves as "the Sovereign People" and "the Sovereign People of New York," *see, e.g.,* Complt., p. 12, and they list various quotations, cases, precepts, and arguments presenting a common theme that is summarized in one statement in their Complaint: "We the Sovereign People are independent of all legislated statutes, codes, rules, and regulations." *Id.*, p. 15. So despite the fact that buried within this prolix pleading are references to various statutes, such as 42 U.S.C. §§ 1983, 1985, and 1986, and 18 U.S.C.§§ 241 and 242, all of Plaintiffs' claims essentially rely upon their simple assertion that the laws which regulate guns in New York State are unconstitutional because they cannot apply to them as "sovereign" citizens. In fact, Plaintiffs go so far as to assert the "the disarming" of them "is an ACT OF WAR" by the Defendants, *id.*, p. 17, and they express a concern that "the enemies of the Sovereign People" labor at the behest of "the National Lawyers Guild, the nation's oldest and largest progressive BAR association, a communist organization hell-bent on the destruction of our Constitutional Republic." *Id.*, p. 19. Despite the fact that the Plaintiffs also assert that they "will not accept a dismissal" of this action since "magistrates have no such leave in this court of

3

record to dismiss by summary proceeding," *id*., p. 9, the Defendants do hereby move to dismiss this action under FRCP 12(b)(6) because Plaintiffs' Complaint fails to state a viable legal claim.

## Standard of Review

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). It is not enough for a plaintiff to allege facts that are consistent with liability; the complaint must "nudge" claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. "To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd*., 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555).

Determining whether a complaint states a plausible claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. The court must accept all facts alleged in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 124 (2d Cir. 2008) (per curiam). However,

> '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.' A complaint must therefore contain more than 'naked assertion[s] devoid of further factual enhancement.' Pleadings that contain 'no more than conclusions . . . are not entitled to the assumption of truth' otherwise applicable to complaints in the context of motions to dismiss.

*DeJesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 87-88 (2d Cir. 2013) (alterations in original) (quoting *Iqbal*, 556 U.S. at 678-79). Thus, a complaint that offers "labels and conclusions" or

"naked assertion[s]" without "further factual enhancement" will not survive a motion to dismiss. *Iqbal*, 556 U.S. at 678 (alteration in original) (citing *Twombly*, 550 U.S. at 555, 557).

Because Plaintiffs are proceeding *pro se*, the Court must liberally construe their allegations and "interpret[ ] [them] to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (internal quotation marks and citation omitted). Nevertheless, "dismissal of a *pro se* complaint is [ ] appropriate where a plaintiff has clearly failed to meet the minimum pleading requirements." *Rahman v. Schriro*, 22 F. Supp. 3d 305, 310 (S.D.N.Y. 2014) (citing *Rodriguez v. Weprin*, 116 F.3d 62, 65 (2d Cir. 1997)).

## Argument

### Point I

**Plaintiffs' broad-based "sovereign citizen" Second Amendment challenge to the New York State SAFE Act and numerous other firearms-related statutes is frivolous and must be dismissed by the Court.**

In their 23-page Complaint, Plaintiff John Vidurek and his 33 other "co-plaintiffs"[1] seek to assert a Second Amendment challenge the New York State SAFE Act and numerous other New York Penal laws that are related to firearms and weapons, including, but not limited to, Penal Law § 265.02 (criminal possession of a weapon in the third degree), which bans "incendiary bomb[s]" and "machine-gun[s]", among other types of weapons, and Penal Law § 400.00. which requires that applicants prove "proper cause" to obtain licenses to carry handguns for self-defense. *See* Complt., p. 23.

---

[1] In this action, Plaintiff John Vidurek has filed a Complaint in which he purports to be a "co-plaintiff" with 33 other individuals, but these 33 other individuals did not sign the Complaint, as is required by FRCP 11(a). *See Rodriguez v. N.Y.C. Police Dep't*, 2011 U.S. Dist. LEXIS 122871, at *18 (S.D.N.Y. Oct. 24, 2011) ("each Plaintiff must sign the Complaint and state his or her address, email address, and telephone number") (attached).

Notably, though, Plaintiffs do not challenge New York's firearm-related statutes on the basis that they allegedly violate the U.S. Supreme Court's holdings in *District of Columbia v. Heller*, 554 U.S. 570 (2008) or *McDonald v. City of Chicago*, 130 S. Ct. 3020, 3026, 3042 (2010), or even that they allegedly violate the Second Circuit's holdings in cases such as *Kachalsky v. Cty. of Westchester*, 701 F.3d 81, 83 (2d Cir. 2012) (upholding a Second Amendment challenge to Penal Law § 400.00(2)(f)).  Indeed, any type of legal challenge along those lines would be completely meritless.  *See, e.g., N.Y. State Rifle & Pistol Ass'n v. City of N.Y.*, 883 F.3d 45 (2d Cir. 2018); *Mishtaku v. Espada*, 669 F. App'x 35 (2d Cir. 2016); *New York State Rifle & Pistol Ass'n, Inc. v. Cuomo*, 804 F.3d 242 (2d Cir. 2015).  Rather, Plaintiffs' claim here is strictly based upon a "sovereign citizen" Second Amendment type of legal theory.

Although, in their Complaint, the Plaintiffs refer to themselves as "the Sovereign People" and "the Sovereign People of New York", *see, e.g.*, Complt., p. 12, and not explicitly as "sovereign citizens", their claims are clearly rooted in the now all-too-common "sovereign citizen" genre of legal claims,[2] since, as is noted above, the Plaintiffs advance a belief system such as this: "We the Sovereign People are independent of all legislated statutes, codes, rules, and regulations."  *See, id*., p. 15.  In sum, Plaintiffs believe that, as "the Sovereign People," New York State gun-related laws simply do not apply to them, and they seek a ruling from the Court upholding that belief system, as well as awarding each of them $50,000 for alleged "psychological stress and fear of violence."  *Id*., p. 23.

There is, however, no basis to the Plaintiffs' "sovereign citizen" Second Amendment claim:

---

[2] *See Kayin El v. United States*, No. 17-cv-1398-SMY, 2018 U.S. Dist. LEXIS 16670, at *9 (S.D. Ill. Jan. 31, 2018) ("Plaintiff's argument is part of a growing trend, commonly referred to as the 'sovereign citizen' movement.  It is premised on faulty reasoning that has consistently been deemed frivolous.") (attached).

6

> The Second Circuit has described "sovereign citizens" as "a loosely affiliated group who believe that the state and federal governments lack constitutional legitimacy and therefore have no authority to regulate their behavior." *United States v. Ulloa*, 511 F. App'x 105, 107 n.1 (2d Cir. 2013). The "sovereign citizen" belief system has been described by other courts as "completely without merit," "patently frivolous," *United States v. Jagim*, 978 F.2d 1032, 1036 (8th Cir. 1992), and having "no conceivable validity in American law," *United States v. Schneider*, 910 F.2d 1569, 1570 (7th Cir. 1990).

*Robinson v. Fischer*, No. 9:13-CV-1545 (GTS/TWD), 2014 U.S. Dist. LEXIS 44644, at *14 (N.D.N.Y. Mar. 31, 2014) (attached). *See also Charlotte v. Hansen*, 433 Fed. Appx. 660, 661 (10th Cir. 2011) (rejecting the sovereign citizen theory as having no conceivable validity in American law); *Linge v. State of Georgia, Inc.*, 569 F. App'x 895, 896 (11th Cir. 2014) ("[T]o the extent that [the plaintiff] more broadly argues that he is a sovereign citizen and not subject to . . . Georgia laws, both we and the district court lack jurisdiction because it is 'wholly insubstantial and frivolous.'") (citations omitted).

Based upon the foregoing case law, the Defendants respectfully assert that their motion to dismiss should be granted by the Court. As this very Court has noted in the past, not only have "[t]heories presented by … sovereign citizen adherents" been "rejected by the courts", but they have also been clearly "recognized as frivolous and a waste of court resources." *Muhammad v. Smith*, No. 3:13-cv-760 (MAD/DEP), 2014 U.S. Dist. LEXIS 99990, at *6-7 (N.D.N.Y. July 23, 2014) (attached). Since Plaintiffs' entire challenge to the gun-related statutes of New York State is premised upon this same frivolous legal argument, their Complaint must be dismissed by the Court.

**Point II**

**Plaintiffs' claims must also be dismissed based upon the doctrine of collateral estoppel since these same Plaintiffs litigated and lost identical legal claims in State court in 2013 against the Governor and each of the members of the New York State Senate and Assembly.**

The doctrine of collateral estoppel bars re-litigation of issues previously litigated and decided, and it applies to civil rights lawsuits brought pursuant to 42 U.S.C. § 1983. *Allen v. McCurry*, 449 U.S. 90 (1980); *Gill v. Stella*, 845 F. Supp. 94, 100 (E.D.N.Y. 1994). Application of collateral estoppel in such federal cases is governed by the Full Faith and Credit Act, 28 U.S.C. §1738, which requires federal courts to give the same preclusive effect to state court judgments as they would receive in the courts of that state. *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984); *Burkybile v. Bd. of Educ. of Hastings-on-Hudson*, 411 F.3d 306, 310 (2d Cir.), cert. denied, 546 U.S. 1062 (2005). Thus, this Court applies New York State law to determine the preclusive effect of the prior proceeding.

Under New York law, collateral estoppel will preclude re-litigation of an issue if the issue sought to be precluded is identical to the issue in the first proceeding, and has been decided in the prior proceeding in the context of a full and fair opportunity to litigate. *Colon v. Coughlin*, 58 F.3d 865, 869 (2d Cir. 1995); *Caridi v. Forte*, 967 F. Supp. 97, 100 (S.D.N.Y. 1997); *see Capital Telephone Co. v. Pattersonville Telephone Co.*, 56 N.Y.2d 11, 17-18 (1982); *Schwartz v. Public Administrator*, 24 N.Y.2d 65, 71 (1969). In addition, the issue sought to be precluded from re-litigation must have been necessarily determined in the prior proceeding. *Green v. Montgomery*, 219 F.3d 52, 55 (2d Cir. 2000); *Carlen v. Department of Health Services*, 104 F.3d 351, 351 (2d Cir. 1996); *Colon*, 58 F.3d at 869; *Rameau v. New York State Dep't. of Health*, 741 F. Supp. 68, 70-71 (S.D.N.Y. 1990). An issue that is "'necessarily decided' must have been both 'actually decided' . . . and necessary to support a valid and final judgment on the merits."

*Beechwood Restorative Care Center v. Leeds*, 436 F.3d 147, 153 (2d Cir. 2006). Accordingly, this Court's analysis "is governed by New York State law, which has adopted a transactional approach to res judicata, barring a later claim arising out of the same factual grouping as an earlier litigated claim even if the later claim is based on different legal theories or seeks dissimilar or additional relief." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994) (citing *Smith v. Russell Sage Coll.*, 54 N.Y.2d 185, 192-93, (1981)).

Attached as Exhibit A to the Declaration of Michael G. McCartin, the Court can find an "Action at Law" against Governor Cuomo and each and every member of the New York State Senate and Assembly that Plaintiff Vidurek and his other eight-hundred (800) "co-plaintiffs" brought in New York Supreme Court, Albany County, in 2013.[3] In his decision dismissing that "Action at Law," the Hon. Richard M. Platkin, A.S.C.J., summarized the Complaint as follows:

> Plaintiffs are suing the Governor, the Senate and the Assembly "for dereliction of duty, abuse of power, conspiracy to disarm the people [and] for declaratory judgment, with enforcement, regarding a long train of abuse and usurpation of the peoples' unalienable right to bear arms" (complaint, preamble). Plaintiffs contend that defendants have violated their federally protected rights through the enactment of legislation regulating the sale, possession and use of firearms and ammunition (*id*. ¶ 19). While the complaint focuses particularly on the enactment of the NY SAFE Act, plaintiffs also challenge Penal Law articles 265 and 400 and all other similar state laws. According to plaintiffs, these measures "prevent people from defending themselves" (*id*. ¶¶ 24-26) and are "repugnant to the Second Amendment, and therefore are null and void" (*id*. ¶ 27).

*Mongielo v. Cuomo*, 40 Misc. 3d 362, 363-64 (Sup. Ct., Alb. Co. 2013). Thus, as this Court can see, Plaintiff Vidurek and his "co-plaintiffs" brought the same type of claims in State court that they now bring here, but those claims were properly dismissed by that State court on the merits:

---

[3] A 12(b)(6) motion "is appropriate when a defendant raises claim preclusion . . . and it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law." *Conopco, Inc. v. Roll Int'l*, 231 F.3d 82, 87 (2d Cir. 2000). And this Court can clearly take judicial notice of the Plaintiffs' state court complaint from 2013. *See Staehr v. Hartford Fin. Servs. Group*, 547 F.3d 406, 424-25 (2d Cir. 2008) (holding it was proper for district court to take judicial notice of, *inter alia*, state court complaints).

> [I]n maintaining that the state's entire body of law governing the sale, possession and use of firearms and ammunition is "immediately null and void," plaintiffs' claim is refuted directly by precedent of the United States Supreme Court, the Appellate Divisions of the New York State Supreme Court and the United States Court of Appeals for the Second Circuit. … [T]he precedent cited above conclusively forecloses plaintiffs' claim that the state's firearms laws suffer from "wholesale constitutional impairment" []  As plaintiffs cannot demonstrate that the laws they challenge are unconstitutional in all respects and under all applications, the complaint must be dismissed for failure to state a cause of action (*Matter of Moran Towing Corp. v. Urbach*, 99 N.Y.2d 443, 448, 787 N.E.2d 624, 757 N.Y.S.2d 513 (2003)).

*Mongielo*, 40 Misc. 3d 365-66.

Thus, Plaintiffs' Complaint in this action must also be dismissed based upon the doctrine of collateral estoppel.

## Conclusion

Consequently, the Court should dismiss this action in its entirety pursuant to FRCP Rule 12(b)(6) since the Plaintiffs fail to state a valid cause of action against the Defendants.

Dated: Albany, New York
       May 16, 2018

                                               BARBARA D. UNDERWOOD
                                               Acting Attorney General of the State of New York
                                               The Capitol, Albany, NY 12224

                                               s/*Michael McCartin*
                                               Michael G. McCartin
                                               Assistant Attorney General
                                               Bar Roll No. 511158
                                               Email: michael.mccartin@ag.ny.gov

To:    Mr. John Vidurek
          *Plaintiff Pro Se*
          3979 Albany Post Road
          Hyde Park, NY  12538

          George Gard
          c/o John Vidurek
          3979 Albany Post Road
          Hyde Park, NY 12538
          PRO SE

Betty Gard
c/o John Vidurek
3979 Albany Post Road
Hyde Park, NY 12538
PRO SE

Cerus Maarten
c/o John Vidurek
3979 Albany Post Road
Hyde Park, NY 12538
PRO SE

Charles Karlstrom
c/o John Vidurek
3979 Albany Post Road
Hyde Park, NY 12538
PRO SE

Danid D. Joy
c/o John Vidurek
3979 Albany Post Road
Hyde Park, NY 12538
PRO SE

Anthony Futia, Jr.
c/o John Vidurek
3979 Albany Post Road
Hyde Park, NY 12538
PRO SE

Tanya E. Parrow
c/o John Vidurek
3979 Albany Post Road
Hyde Park, NY 12538
PRO SE

Joseph Atkinson
c/o John Vidurek
3979 Albany Post Road
Hyde Park, NY 12538
PRO SE

Mozart D. Victor
c/o John Vidurek
3979 Albany Post Road
Hyde Park, NY 12538
PRO SE

Gary E. Edgreen
c/o John Vidurek
3979 Albany Post Road
Hyde Park, NY 12538
PRO SE

Mary Jane Edgreen
c/o John Vidurek
3979 Albany Post Road
Hyde Park, NY 12538
PRO SE

Alvin Gonzalez
c/o John Vidurek
3979 Albany Post Road
Hyde Park, NY 12538
PRO SE

Gerard Aprea
c/o John Vidurek
3979 Albany Post Road
Hyde Park, NY 12538
PRO SE

Michelle Aprea
c/o John Vidurek
3979 Albany Post Road
Hyde Park, NY 12538
PRO SE

Jon E. Delong
c/o John Vidurek
3979 Albany Post Road
Hyde Park, NY 12538
PRO SE

Senny Nunez
c/o John Vidurek
3979 Albany Post Road
Hyde Park, NY 12538
PRO SE

Walter K. Janczak, Jr.
c/o John Vidurek
3979 Albany Post Road
Hyde Park, NY 12538
PRO SE

Kimberly Vidurek
c/o John Vidurek
3979 Albany Post Road
Hyde Park, NY 12538
PRO SE

William E. Conta
c/o John Vidurek
3979 Albany Post Road
Hyde Park, NY 12538
PRO SE

Leonard Volodarsky
c/o John Vidurek
3979 Albany Post Road
Hyde Park, NY 12538
PRO SE

David Paul
c/o John Vidurek
3979 Albany Post Road
Hyde Park, NY 12538
PRO SE

John Schultz
c/o John Vidurek
3979 Albany Post Road
Hyde Park, NY 12538
PRO SE

Joseph Frioco
c/o John Vidurek
3979 Albany Post Road
Hyde Park, NY 12538
PRO SE

Michelle Frioco
c/o John Vidurek
3979 Albany Post Road
Hyde Park, NY 12538
PRO SE

William R. Fox, Sr.
c/o John Vidurek
3979 Albany Post Road
Hyde Park, NY 12538
PRO SE

James Birsen
c/o John Vidurek
3979 Albany Post Road
Hyde Park, NY 12538
PRO SE

Joanne Johnson Smith
c/o John Vidurek
3979 Albany Post Road
Hyde Park, NY 12538
PRO SE

Stacey Cumberbatch
c/o John Vidurek
3979 Albany Post Road
Hyde Park, NY 12538
PRO SE

Don Alan McLaughlin
c/o John Vidurek
3979 Albany Post Road
Hyde Park, NY 12538
PRO SE

Michael R. Wiehl
c/o John Vidurek
3979 Albany Post Road
Hyde Park, NY 12538
PRO SE

Michael Anthony Livecche, Jr.
c/o John Vidurek
3979 Albany Post Road
Hyde Park, NY 12538
PRO SE

Jose Ferreira Cruz
c/o John Vidurek
3979 Albany Post Road
Hyde Park, NY 12538
PRO SE

James Burlinski
c/o John Vidurek
3979 Albany Post Road
Hyde Park, NY 12538
PRO SE